

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE NORTHERN TRUST COMPANY<br>and AMERICAN CASUALTY<br>COMPANY OF READING,<br>PENNSYLVANIA,<br><br>   Plaintiffs,<br><br>  vs.<br><br>MS SECURITIES, INC., BEAR,<br>STEARNS & COMPANY, INC., and<br>BEAR, STERNS SECURITIES<br>CORPORATION,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05 C 3370 |
| THE NORTHERN TRUST COMPANY<br>and AMERICAN CASUALTY<br>COMPANY OF READING,<br>PENNSYLVANIA,<br><br>  vs.<br><br>MERRILL LYNCH & CO., INC., and<br>MERRILL LYNCH, PIERCE, FENNER<br>& SMITH INCORPORATED,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05 C 3373 (related case) |

### MEMORANDUM OPINION AND ORDER

Defendants Bear Stearns and Company, Bear Stearns Securities Corporation, MS Securities Corporation, Merrill Lynch & Co., and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively defendants) move for the entry of a protective order under FED. R. CIV. P. 26(b)(1). Defendants propose that the court bar discovery related to their relationship with clients to whom they transferred shares of certain securities. Plaintiff Northern Trust Company (Northern), who loaned those securities to defendants over a period of years, and

pursuant to contracts, opposes the motion and urges that discovery be allowed. For the following reasons, we decline to enter a protective order that would bar all future discovery into third party information, and instead order that discovery be limited to certain topics.

This case is primarily a breach of contract action, albeit with relatively complex subject matter.[1] Northern claims that defendants breached various lending agreements when they failed to return the value of tax credits that were generated from the shares of a regulated investment company. Northern loaned the shares to defendants and alleges that after the loans were made, defendants then transferred the shares to third parties who used the shares for purposes such as tax arbitrage. By holding the shares over the record date, defendants or their customers were entitled to the value of tax credits generated by a constructive distribution of dividends.

Northern also claimed those tax credits on behalf of its pension trust clients and, after litigation, ultimately refunded the value of those credits (plus interest) to the Internal Revenue Service. According to Northern, paragraphs 5 of the lending agreements entitled it to "receive all distributions made on or in respect of any Loaned Securities" and required defendants to compensate it for all economic benefits of ownership related to the borrowed shares. Thus, despite the complex economics, at the heart of the dispute is whether the value of the tax credits qualifies as distributions and economic benefits that plaintiff was contractually entitled to receive from defendants.

Northern now requests information relating to defendants' clients, such as the identities of individuals who were involved in the transactions at issue, the identities of those who

---

[1] Additional background is set forth in Northern Trust Co. v. MS Securities Services, 2006 U.S. Dist. LEXIS 11037, 2006 WL 695668 (N.D. Ill. 2006) and at *id.*, 2006 U.S. Dist. LEXIS 39946 (N.D. Ill. 2006).

requested that defendants borrow the shares, and the identities of those to whom defendants transferred the shares. Northern also asks defendants to produce documents relating to any transactions involving the borrowed shares. According to Northern, this information is crucial to understanding defendants' commercial motivations, and is necessary for determining whether certain interpretations of the agreements are commercially reasonable. Defendants argue that their relationships with third party clients are not relevant to the central issue framed by the court – the meaning of "all distributions" in the context of the contracts.

Rule 26(b)(1) defines the scope of discovery to include any non-privileged matter that is relevant to a claim or defense of any party. Prior to the 2000 amendments, discoverable material encompassed all information relevant to the pending action's subject matter. The purpose of the amendment was to curb the excess costs and delay that were caused by overbroad discovery. Advisory Committee's Notes to 2000 Amendments to Rule 26; Sanyo Laser Prods. v. Arista Records, Inc., 214 F.R.D. 496, 498 (S.D. Ind. 2003). Even though the amendments narrowed the definition of discovery, discovery has not been so circumscribed that information sought must connect directly to a factual allegation in the complaint. *See* Seaga Mfg. v. Fortune Res. Enters., 2002 U.S. Dist. LEXIS 20390 (N.D. Ill. 2002); Beauchem v. Rockford Prods. Corp., 2002 U.S. Dist. LEXIS 18166, *10-11 (N.D. Ill. 2002). Such a construction would undermine the liberal notice pleading standard set forth in Rule 8. Moreover, the court may still order discovery based on the pre-amendment standard, provided that there is good cause.

Good cause generally provides a "sound basis or legitimate need" for the court to take action. Wiggins v. Burge, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (quoting In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1985)); *see also* Hobley v. Burge, 225 F.R.D. 221, 224 (N.D. Ill. 2004) (good cause for a protective order is established when the disclosure will cause

"a clearly defined and serious injury"). Determining whether good cause exists involves balancing the interests of the party seeking information with those of the party from whom information is sought. Wiggins, 173 F.R.D. at 229. The public's interest is also a factor to weigh, and it typically aligns with the interests of the party requesting discovery. As the movants, defendants bear the burden of showing cause for entry of a protective order. *Id.* at 228. We have broad discretion for resolving discovery disputes and in fashioning protective orders. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); Meyer v. Southern Pacific Lines, 199 F.R.D. 610, 611 (N.D. Ill. 2001); Gile v. United Airlines, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996).

The central issue in this case is whether the values of the tax benefits arising from the loaned shares are "distributions," which, under the lending agreements, defendants were obligated to return to Northern. In our ruling on defendants' motions to dismiss, we noted that the critical contract language was ambiguous in that it was susceptible to multiple reasonable interpretations. We also emphasized the importance of the commercial context, and noted that a contract interpretation that was unreasonable in that context would not be adopted. To help determine the meaning of "distribution," we suggested that reference be made to "trade usage and related extrinsic evidence . . . and whether the industry views the tax benefits here to be distributions that must be returned to the lender." Northern Trust, 2006 WL 695668, *9.

To derive an objective understanding of "distribution," we do not require the identities of the individuals or entities to whom defendants loaned the shares. As we read the complaints, Northern claims that it was entitled to the value of the tax credits regardless of how or why defendants disposed of the shares. Northern underscored this point in its response to defendants' motion to dismiss when it noted that "[f]rom the lender's perspective, the passage

of title and any third-party sale is therefore immaterial economically – the lender begins and ends the transaction with the same number of identical shares at market price" (plf. resp. at 4 (dkt. 31)). Thus, as a threshold issue, the meaning of "distribution" may be determined independent of any inquiry into what defendants did with the shares after acquiring them.

Discovery must relate to a claim or defense, and Northern does not claim that defendants breached the contracts by transferring the shares to third parties. Indeed, the contracts required transfers to third parties. Northern claims that paragraph 5 of the lending agreements and industry custom required defendants to provide Northern with all economic benefits associated with the borrowed shares. The third party information Northern seeks will become relevant only after it becomes apparent that the tax benefits could qualify as distributions that should have been returned.

Relevance is not conditioned on proof that the tax benefits are actually distributions. If Northern makes that showing, then, in all probability, it prevails. Rather, satisfaction of a lesser burden would provide, at minimum, good cause to justify further inquiry into the relevance of the third party information. For example, if objective sources, such as industry custom and trade usage, show that tax benefits could qualify as distributions, then discovery into defendants' customers may be necessary to help pin down the meaning of distributions. Or industry custom and similar objective evidence may even show that information related to the third parties is necessary to determine the meaning of distributions. Both scenarios would show a legitimate need for the third party discovery. Presently, Northern's arguments fail to demonstrate this need.[2]

---

[2] If good cause, but not relevance, for discovery is established, a limited inquiry into the third party information may help verify whether further discovery into the material is necessary. Such a probe may consist of a random sampling of defendants' customers, or limited discovery that focuses on a specific customer, such as Robert Gordon, who has been the subject of much discussion and has submitted a declaration in this case.

Northern's principal argument in support of production is that information related to defendants' third party transactions is required in order to understand the economic consequences of the lending agreements. The court expressed interest in the economic consequences of the transactions, and invited the parties to provide additional briefing and arguments on the topic. One of our primary concerns was Northern's ability to recover the value of the tax credits with respect to its clients' tax statuses. Defendants' post-loan conduct became a subject of debate after they contended that Northern's interpretation of the contract would effectively saddle them with a tax burden while forcing them to transfer the offsetting tax benefit to Northern. Northern offered several scenarios in which defendants could have recouped the tax benefit, and also noted that if defendants transferred the shares to a third party pursuant to a purported arbitrage scheme, then defendants had no tax burden because they were not shareholders of record.

In this sense the true identity of the shareholders of record is relevant to a potential defense. However, if the tax credits are not distributions that must be returned to Northern pursuant to the contract, then defendant did not breach paragraph 5 of the agreements, regardless of its tax status as shareholder of record. Similarly, defendants argue that they failed to preserve their rights against their customers because Northern failed to bring this action in a timely manner. If defendants put their conduct with third party clients in issue as a defense, then information related to those clients would be within the proper scope of discovery. Nevertheless, allowing discovery connected to defenses that are mooted by a specific interpretation of the contract's terms would result in a substantial waste of resources, and any marginal relevance is therefore outweighed by the harm caused by discovery. *See* Sanyo Laser Prods., 214 F.R.D. at 499. If Northern shows that the tax benefits could qualify as

distributions, then the defenses noted above would provide independent grounds that favor discovery.

Northern further contends that defendants' third party transactions are discoverable because they will explain why defendants entered into the lending agreements. Defendants' commercial motivations are immaterial under Northern's argument that the language of the lending agreements required defendants to compensate it for the value of the tax credits. This follows from the principal that a party's motive for terminating a contract is generally irrelevant in a breach of contract claim. Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 589 (7th Cir. 2000); General Elec. Capital Corp. v. Donogh Homes, 1993 U.S. Dist. LEXIS 17690 (N.D. Ill. 1993). Moreover, the mere invocation of a duty to deal in good faith does not justify an inquiry into motive. Tuf Racing Products, 223 F.3d at 589.

However, motive may be relevant when a party deceives another as to the meaning of a contractual term. Yet, if defendants entered into the lending agreements intending to borrow the QFV shares and retain the value of the tax credits generated by the constructive distributions, their motivations, even if we assume them to be contrary to Northern's expectations, would not be relevant unless the value of those tax credits could be seen as distributions. Moreover, Northern does not allege fraud in its complaints. Defendants' commercial motivations for borrowing the shares are thus independent of any affirmative contractual duties that required defendants to return the value of the tax credits generated by the shares.

Northern also argues that the identities of defendants' clients constitute relevant extrinsic evidence that will help illuminate the meaning of the terms in the contract. This is not the variety of extrinsic evidence that we invoked in our order on defendants' motions to

dismiss, and again in our discussion above. Priority was placed on objective evidence, such as industry and trade usage of the term "distribution." The parties' subjective understandings of ambiguous contract terms may later be relevant (*see* Joy v. Hay Group, Inc., 403 F.3d 875, 878 (7th Cir. 2005)),³ but this does not now authorize discovery into how third parties conceive those terms.

For the most part, Northern's focus on defendants' purportedly inappropriate purposes for borrowing the shares digresses from the claims in its complaints. However, Northern did allege that defendants breached their duty to deal in good faith and, by engaging in arbitrage transactions, failed to comply with a provision that required defendants to borrow the shares solely for the purposes permitted by section 6(h) of Regulation T of the Board of Governors of the Federal Reserve System. At this time neither of these grounds provides good cause for the requested discovery.

By claiming that defendants violated their duties to act in good faith, Northern essentially argues that defendants failed to act in a manner consistent with its reasonable expectations. The covenant of good faith and fair dealing is only a mechanism for construing terms in a contract. Baxter Healthcare Corp. v. O.R. Concepts, 69 F.3d 785, 792 (7th Cir. 1995). It is not an independent claim and alone it does not justify discovery under Rule 26(b)(1). With respect to Northern's reference to section 6(h), defendants correctly note that the section was amended in 1983 and in its current form it allows a creditor to effect and finance bona fide arbitrage transactions. *See* 12 C.F.R. § 220.6. Defendants also highlight that neither the 1994 agreement with Bear Stearns nor the 1988 agreement with Merrill Lynch

---

³The parties' subjective understandings of the contract terms, at the time the agreements were entered into, could also bear on Northern's reformation claim. In their motion defendants argue that the discovery is irrelevant to the rescission claim, but that claim was dismissed. *See* Northern Trust, 2006 WL 695668, *15-17.

contain this limitation on defendants' use of the borrowed shares. Moreover, Northern's claim is that the contracts required defendants to return the value of the tax credits, and not that defendants failed to compensate Northern pursuant to paragraph 7, which contains reference to section 6(h)).

Discovery into defendants' dealings with third parties is premature absent a showing that the value of the tax credits could qualify as "distributions." A sufficient showing to trigger additional discovery should be based on objective evidence, such as industry custom and practice. It is not necessary to demonstrate conclusively that the tax credits are distributions. Thus, the discovery that defendants identify in their motion cannot, at this stage, be pursued. However, a blanket protective order barring all future discovery into these matters would be overbroad, as we have noted situations that could warrant discovery. Good cause justifying discovery may exist after a determination that the value of the tax credits could be understood as distributions, but that is an issue for another day.[4]

## CONCLUSION

For the foregoing reasons, defendants' motion for a protective order is denied, but the parties are directed to limit discovery to the issues set forth above.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

June 30, 2006.

---

[4] Defendants also argue that Northern's discovery and document requests would violate the privacy rights of their clients under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq*. Section 6801(e)(8) allows for disclosure of private financial information in response to "judicial process," which includes the discovery proceedings in civil actions. *See* Marks v. Global Mortg. Group, Inc., 218 F.R.D. 492, 496 (S.D. W. Va. 2003). If and when the third party information becomes discoverable, the court will enter an appropriate order protecting the privacy interests of defendants' clients.